932 So.2d 245 (2005)
Jack SCHRAM, Appellant,
v.
Mindy Sue SCHRAM, Appellee.
No. 4D04-1622.
District Court of Appeal of Florida, Fourth District.
September 7, 2005.
*247 Steven Cripps of Law Offices of Orsley & Cripps, P.A., West Palm Beach, for appellant.
Lynn G. Waxman of Lynn G. Waxman, P.A., West Palm Beach, for appellee.
SHAHOOD, J.
This is an appeal by Jack Schram, former husband, from an Amended Final Judgment of Dissolution of Marriage. Former husband raises two issues on appeal. We affirm in part, reverse in part, and remand to the trial court for further proceedings.
First, former husband claims that the trial court erred in imputing income to him for the purpose of awarding child support and requiring the repayment of funds. Second, former husband argues the trial court erred in awarding sole parental responsibility to former wife and in limiting his visitation.
The parties were married on March 25, 1989, and separated in July 2002. They have twin daughters born October 5, 1992. Former wife was a school teacher earning $61,000 gross per year; former husband had been in the jewelry business, but alleged that he was disabled and had no income. Following several robberies, former husband closed down his jewelry store.
In seeking alimony and child support, former wife alleged that former husband, although not recently employed, had been a jeweler and had access to funds. In addition, former wife sought an unequal, equitable distribution due to an Internal Revenue Service judgment against former husband only, stemming from problems associated with his business practices.
Former husband filed an answer and counter-petition. In seeking permanent alimony, former husband alleged that he was totally disabled as a result of chronic pain resulting from multiple gunshot wounds and a severe car accident. He claimed that he could work only a couple of hours a day and that former wife earned more income from her employment as a school teacher.
An order on temporary relief was entered on January 28, 2002. On March 26, 2003, former husband was held in contempt. The trial court found that former *248 husband removed items from the marital home without consent and that former husband had the ability to comply with the order on temporary relief and had willfully refused to pay his share of the children's tuition. As a result, former husband was ordered to return the items taken, pay the tuition owed and pay former wife's attorney's fees necessitated by seeking the contempt order. Former wife also moved for an order requiring that former husband return the monies he liquidated from the children's education funds.
At the final hearing, former wife testified that she was 47 years old and was an elementary school teacher earning $61,000 per year. The marital home was valued at $240,000 with a $145,000 mortgage. Former wife was seeking the marital home as part of the equitable distribution. She claimed that throughout the proceedings, former husband refused to cooperate in order to refinance the home and lower the payments. Former wife sought to be named the owner of the children's prepaid college plans due to the fact that former husband had liquidated the children's custodial accounts in the amount of $21,031.94 and removed $5,500 from their savings accounts. Former wife wanted the monies returned and for her to be designated as the custodian of the accounts.
Former wife stated that former husband was 55 years old and had a Master's degree in psychology. Former husband was a jeweler and had his own store in West Palm Beach until he closed it about four years ago. She maintained that at the time of the store's closure, former husband had an inventory of $500,000 worth of jewelry. Former wife stated that former husband also received a jewelry inventory from his father (who had also been a jeweler) during the marriage valued at $250,000.
Due to federal income tax deficiencies stemming from former husband's jewelry business, the IRS sued the parties. Former wife received "innocent spouse status." The IRS made a tax assessment that former husband earned $236,195 in 1994 and $478,568 in 1995. Prior to the imposition of penalties and interest, the IRS assessed former husband as owing $350,427 in unpaid taxes. A federal tax lien was placed upon the marital home in the amount of $613,524.69 (which includes interest and penalties) against former husband only. In addition, liens were placed on the marital home due to former husband's failure to pay homeowner association's dues.
Former husband testified that he obtained his degree in psychology in 1972 but never pursued that line of work. In 1985, he was involved in a car accident that left him disabled for four years. He sustained extensive injuries, including a broken hip, damaged sciatic nerve, collapsed lungs, ruptured spleen, broken arms and legs and an injured jaw. After that, he went into the jewelry pawn business.
Former husband had undergone four hip replacements over the past twenty years, and claimed that due to his surgeries, he has minimal circulation in his right leg, increased swelling and difficulty ambulating. He takes several medications to control the pain and regulate his circulation.
In addition, former husband had been the victim of three armed robberies at his jewelry store. Although he sustained no injuries in the first incident, former husband claimed that he sustained brain damage causing short-term memory loss following being maced and hit with a gun; former wife disputes this. In the third incident, which occurred in 1994, former husband sustained four gunshot wounds to the abdomen and one to the arm. His recovery from those wounds took several months. He claimed that he contracted copper poisoning as a result of the shooting *249 and has chronic pain due to damage to his spine.
Former husband claimed that he tried to find work during the last few years, but can sit, at most, for about an hour at a time. In order to pay bills, former husband claimed that he sold what jewelry remained by selling jewelry from his apartment or selling unsellable jewelry for its gold content at a jewelry exchange. He stated that his jewelry business was last successful in 1994, that he closed his store in 2000, and sold his brother $30,000 in jewelry in 2002.
In an amended final judgment, the trial court imputed income to former husband in the amount of $61,000 (the same amount as earned by former wife). The court also awarded former wife sole parental responsibility and allowed former husband visitation on Wednesdays from 4:00 p.m. to 7:00 p.m. and every other weekend from Saturday at 9:00 a.m. until Sunday at 11:00 a.m. The court awarded former wife sole ownership of the marital home after taking into consideration former husband's refusal to agree to refinancing, the federal tax lien on former husband's share of the house in the amount of $613,524.69 and his failure to pay the homeowner's association dues during the pendency of the litigation. Neither party was awarded alimony and former husband was to pay child support in the amount of $1,250 per month. Former husband was directed to return items taken from the marital home and to restore the funds taken from the children's custodial accounts.
In requiring that former husband pay child support and other financial obligations, the trial court imputed income to former husband by finding that "it would be fair and equitable to impute the same earnings to the husband [as earned by former wife] as he has a master's degree in counseling and the testimony (which the court accepts) is that there is no impediment to the husband continuing in his occupation as a jeweler. The only credible testimony was that the last time the husband filed federal income tax he had earnings in excess of $250,000."
On appeal, former husband claims that the trial court erred in imputing $61,000 income to him "without evidence as to either his ability to earn income and/or availability of assets with which to pay the obligations designated in the Final Judgment." We agree.
In considering the imputation of income, the standard of review is whether the trial court's determination is supported by competent, substantial evidence. See Gruber v. Gruber, 857 So.2d 329, 331 (Fla. 2d DCA 2003).
In order to impute income to the husband, specific findings are required that indicate source and amount. See Batson v. Batson, 821 So.2d 1141, 1143 (Fla. 5th DCA 2002). When imputing income to a party, the trial court must set forth factual findings as to the probable and potential earnings level, source of imputed and actual income, and adjustments to income. See Bimonte v. Martin-Bimonte, 679 So.2d 18, 19 (Fla. 4th DCA 1996). A court may impute income where a party is willfully earning less and the party has the capability to earn more by the use of his best efforts. See Gruber, 857 So.2d at 331. Although the trial court is free to determine the credibility of witnesses, restraints on imputation exist in the form of a required two-step analysis. First, the trial court must conclude that the termination of income was voluntary; second, the court must determine whether any subsequent underemployment "resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income *250 at a level equal to or better than that formerly received." See Konsoulas v. Konsoulas, 904 So.2d 440, 443 (Fla. 4th DCA 2005)(quoting Ensley v. Ensley, 578 So.2d 497 (Fla. 5th DCA 1991)). In any event, the trial court may only impute a level of income supported by the evidence of employment potential and probable earnings based on history, qualifications, and prevailing wages. See id.
In this case, the evidence demonstrated that former husband was last assessed by the IRS for failure to pay taxes in 1994 and 1995, at which time he was assessed as earning $236,195 and $478,568, respectively. Former husband stated that he closed his business in 2000 and due to his disabilities (resulting from his various injuries), he would sell off his remaining jewelry inventory to pay bills. Former husband last sold his brother $30,000 in jewelry in 2002. The court stated that there was no impediment to former husband continuing his occupation as a jeweler, but there was no evidence to support that claim.
Further, there was no evidence that former husband who earned a degree in psychology in 1972 ever worked in that field or was qualified to obtain a position in that field. Thus, the court's reliance on this fact does not support its imputation.
With respect to the second issue raised in the amended final judgment, the trial court held that "after considering all of the statutory factors set forth in Section 61.13(3)(a)-(m), that is it [sic] in the paramount interests of the child that the court award the mother sole parental responsibility for the two minor children and so the court so orders." "In the absence of an agreement, the husband shall have the children with him on Wednesdays from 4:00 p.m. until 7:00 p.m. and every other weekend from Saturday at 9:00 a.m. until Sunday at 11:00 a.m."
Former wife concedes error in part, and we agree, as to the trial court's award of sole parental responsibility to former wife. "The wife agrees that section 61.13(2)(b)2 requires that a trial court `shall order that the parental responsibility for a minor child be shared by both parents unless the court finds that shared parental responsibility would be detrimental to the child.'" Grimaldi v. Grimaldi, 721 So.2d 820, 821 (Fla. 4th DCA 1998). Because the trial court failed to make a specific finding that shared parental responsibility would be detrimental to the children, the trial court erred in awarding sole parental responsibility to former wife. In accordance with Grimaldi, the matter must be remanded so that the trial court can make a finding regarding whether shared parental responsibility is detrimental to the children. On remand, the court may, in its discretion, either take additional evidence or rule on the record presently available. See id.
As to restricting former husband's visitation, the trial court made no findings in this regard. Former husband points out that the visitation restriction was the same restriction placed upon him in the temporary relief order. In the temporary relief order, the trial court restricted visitation "as his health permits." Former husband claims that while former wife argues that he is not too infirm to work, she also argues that he is too infirm to take care of the children.
Former wife claims that former husband is not a good role model for the children, that he has an anger management problem, has been violent, fails to return the children on time and fails to get their homework assignments completed. One child refuses visitation because she is scared of former husband.
*251 While the denial or restriction of visitation rights is generally disfavored, it is within the court's discretion to restrict or limit visitation, as may be necessary, to protect the welfare of the child. See Allen v. Allen, 787 So.2d 215, 217 (Fla. 5th DCA), review denied, 800 So.2d 612 (Fla. 2001). A ruling limiting visitation will not be disturbed absent a finding of abuse of discretion. See Damiani v. Damiani, 835 So.2d 1168, 1169 (Fla. 4th DCA 2002). The privilege of visiting the minor children of the parties to a divorce proceeding should never be denied either parent so long as he or she conducts himself or herself, while in the presence of such children, in a manner which will not adversely affect the morals or welfare of such progeny. See id. (quoting Yandell v. Yandell, 39 So.2d 554 (Fla.1949)). Based on the testimony adduced at trial, the trial court did not abuse its discretion in limiting former husband's visitation.
Accordingly, we reverse that part of the amended final judgment which imputes income to appellant for purposes of awarding child support and requiring the repayment of funds by appellant and remand for further proceedings in accordance with this opinion. We also reverse the trial court's finding of sole parental responsibility and remand for the court to make a specific finding whether, in accordance with Grimaldi, shared parental responsibility is detrimental to the children. We affirm the trial court's ruling in limiting former husband's visitation.
Affirmed in part; Reversed in part, and Remanded.
STONE and MAY, JJ., concur.