POLEN, J.
 

 The Appellant, Daniel M. Durand, appeals the trial court’s Final Judgment of Dissolution of Marriage as to,
 
 inter alia,
 
 the denial of his request for partition and sale of the marital home and the imputation of income to him in determining his alimony obligations. This court has jurisdiction. Fla. RApp. P. 9.030(b)(1)(A) (2008).
 

 Husband and the Appellee, Gloria J. Du-rand, were married in 1965. The couple has two grown children. They constructed a home in a gated community in Vero Beach a few years ago, in which the cost to live was approximately $700 per month. Husband was the breadwinner throughout the marriage, working in sales. Wife had a high school education and worked for a few months in a gift shop, but otherwise was a homemaker. Husband left Wife in July 2006 to live with his girlfriend.
 

 Wife suffers from diabetes, heart problems and mental health issues. Wife does not wish to seek employment because she lacks the requisite experience and is in poor health. Husband’s employer terminated him without cause in October 2007. Husband received a severance package totaling $100,019, representing eight months of salary and allowances. He received the severance in a lump sum, however, not over the course of eight months. Husband also held stock and stock options in the privately held company that terminated him.
 

 Husband made attempts to find new employment after losing his job. He sent his
 
 *984
 
 resume to a friend who worked for a job agency and to businesses. He volunteered as a consultant for a few weeks, hoping the company eventually would hire him. Husband testified that he wanted full-time work and that he was not physically prevented from working, though he did not want to travel outside South Florida. As Husband could not find a job, he asked the trial court to order partition and sale of the marital home because he needed money-
 

 After hearing testimony, the trial court entered a Final Judgment of Dissolution of Marriage in September 2008. The court awarded Wife the marital home and required her to make associated payments, thus denying Husband’s request for partition and sale of the property. The trial court also found that the stock and stock options in Husband’s former company had value, that the options could be exercised only by Husband and that both the stock and stock options were nontransferable. Thus, the court awarded Husband the stock and stock options. After equitable distribution of the couple’s marital property, Wife received $292,644.72 and Husband received $245,227.48 in value.
 

 The trial court also determined imputing income of $75,000 per year to Husband was appropriate and ordered him to pay $3000 monthly to Wife in permanent periodic alimony. The court found Husband’s income for the three years preceding the dissolution to be as follows: $75,593 in 2005; $87,058 in 2006; $204,888 in 2007. The trial court also found that because Husband received his severance package after filing the case, the money constituted a non-marital asset. Husband highlighted at trial that the court did not have enough information to impute income to him. The trial court emphasized that Husband had not retained the services of a headhunter. The trial court made its decision to impute income based on Husband’s past income, severance package and, in the trial court’s view, his less-than-sincere efforts to find new employment. The trial court stated that as a result of receiving severance representing eight months of salary and allowances, Husband’s income had not really changed.
 

 Husband filed a Notice of Appeal on September 22, 2008. This appeal ensued. Husband argues that the trial court erred in (a) denying his request for partition and sale of the marital home, (b) allocating the value of his stock and stock options to him and (c) imputing income to him in determining alimony. We affirm as to points (a) and (b) above. The trial court did not abuse its discretion either in awarding Wife the marital home or in apportioning the value of the stock and stock options to Husband. The parties received roughly equivalent value after the trial court’s equitable distribution of their marital assets.
 

 As to Husband’s argument regarding the denial of partition and sale of the couple’s real property, we additionally note that Husband relies on cases whose holdings are outdated since the amendment of the statute governing equitable distribution.
 
 See, e.g.,
 
 § 61.075, Fla. Stat. (2008);
 
 Condrey v. Condrey,
 
 92 So.2d 423, 426 (Fla.1957) (stating partition generally is a matter of right);
 
 Sudholt v. Sudholt,
 
 389 So.2d 301, 302 (Fla. 5th DCA 1980) (“[T]he power of the trial court to deny partition should only be invoked in extreme cases, where otherwise manifest injustice, fraud or oppression would result if the remedy were granted.”). Under the facts of this case, Wife was an older woman with multiple health problems who wished to remain in the marital home because it felt safe to her and her grandchildren. The cost to live in the marital home was very low. Wife had not worked outside the home with limited exceptions and had only a
 
 *985
 
 high school education. Husband was able-bodied, experienced and willing to work. In addition, he had housing with his girlfriend. As such, the trial court did equity in awarding Wife the marital home.
 

 We mainly write to address Husband’s claim that the trial court erred in imputing income to him in determining his alimony obligations. A court may impute income when one spouse has failed to use his best efforts to obtain income, perhaps by arranging his financial affairs and employment to shortchange the payee.
 
 Leonard v. Leonard,
 
 971 So.2d 263, 265 (Fla. 1st DCA 2008). Imputation of income requires a two-part analysis.
 
 E.g., id.
 

 Fust, the trial court must determine that the termination of income was voluntary.
 
 E.g., id.; Chipman v. Chipman,
 
 975 So.2d 603, 608-09 (Fla. 4th DCA 2008). Second, the court must conclude that any subsequent unemployment or underemployment “resulted from the spouse’s pursuit of his own interests through less than diligent and bona fide efforts to find employment at least at a level equal to or better than formerly received.”
 
 E.g., Leonard,
 
 971 So.2d at 265;
 
 Chipman,
 
 975 So.2d at 608-09. The spouse claiming income should be imputed to the unemployed or underemployed spouse bears the burden of showing both employability and that jobs are available.
 
 E.g., Chipman,
 
 975 So.2d at 609.
 

 We reverse the trial court’s decision to impute income to Husband in determining his alimony obligations. The trial court did not have sufficient evidence from which it properly could impute income of $75,000 per year. Husband was terminated without cause; he did not leave his job voluntarily. Thus, the trial court could not conclude that imputation of income was appropriate under the two-part analysis articulated above. In addition, Husband was making efforts to find new employment, such as sending his resume to a job agency and volunteering for a company he thought might hire him. Wife did not carry her burden because she did not provide evidence that jobs were available. On remand, the trial court in its discretion may either fashion a new alimony award based on the existing record or take additional evidence encompassing new circumstances.
 

 Affirm,ed, in part, reversed, and remanded in part.
 

 WARNER, J., and KAPLAN, MICHAEL G., Associate Judge, concur.